**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JUSTIN LEE FOWLER, an individual,

    Plaintiff,                                           CASE NO.:  8:19-cv-00903-JSM-SPF

v.

ELEGANT AUTO FINANCE, LLC,
a Florida limited liability company,

    Defendant.

_____/

**MEMORANDUM IN OPPOSITION TO DEFENDANT, ELEGANT AUTO FINANCE, LLC'S MOTION FOR SUMMARY JUDGMENT ON COUNT I AND MEMORANDUM OF LAW**

Plaintiff, Justin Lee Fowler, an individual ("Mr. Fowler"), by and through his undersigned attorney, pursuant to Rule 3.01(b), Local Rules of the United States District Court, Middle District of Florida, files this his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment on Count I and Memorandum of Law ("Summary Judgment Motion") [DE 29] filed herein by Defendant, Elegant Auto Finance, LLC, a Florida limited liability company ("Elegant Auto" or "Dealership").  In the instant memorandum, the following matters of record will be referred to:

- Declaration of Justin Lee Fowler in Opposition to Motion for Partial Summary Judgment ("Fowler Declaration") filed contemporaneously herewith; and

- Deposition of Corporate Designee of Elegant Auto through Mohammed Gasime Al Shboul, taken on October 17, 2019 ("Al Shboul Deposition") [DE 31].

## I. STATEMENT OF FACTS

The instant action was brought by Mr. Fowler against Elegant Auto for, *inter alia*, the violation of federal and state consumer protection statutes arising out of the purchase of a 2011 Jeep SUV VIN:1J4RR4GG3BC585644 ("Jeep") for which the Dealership did not have title. At the time of the purchase of the Jeep, the Dealership, both in writing and orally, affirmatively represented to Mr. Fowler that the odometer reading for the Jeep was 121,399 miles ("Mileage Representation"). (Complaint - ¶9; ¶¶10-11; 18-19); Fowler Declaration - ¶¶ 4-10].

At the time of the purchase of the Jeep in August 2018, the Dealership provided Mr. Fowler a "Separate Odometer Disclosure Statement and Acknowledgment" ("Initial Odometer Statement"). [DE 21-2]. Through the Initial Odometer Statement, the Dealership represented that the odometer reading of 121,399 "reflected actual mileage." The pertinent portion of the Initial Odometer Statement is reproduced for the ready reference of the Court as follows:

**STATE OF FLORIDA**
**DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES**
**DIVISION OF MOTOR VEHICLES**
2900 Apalachee Parkway
NEIL KIRKMAN BUILDING, TALLAHASSEE, FLORIDA 32399-0610

**SEPARATE ODOMETER DISCLOSURE STATEMENT AND ACKNOWLEDGMENT**

**VEHICLE DESCRIPTION**

| Vehicle Identification Number | Year | Make | Color | Body | Title Number |
|---|---|---|---|---|---|
| 1J4RR4GG3BC585644 | 2011 | JEEP | ALUMINUM | 4D SUV 4WD | |

**ODOMETER DISCLOSURE STATEMENT**

WARNING: Federal and State law requires that you state the mileage in connection with an application for a Certificate of Title. Failure to complete or providing a false statement may result in fines and/or imprisonment.

WE STATE THAT THIS ☐ 5 or ☐ 6 DIGIT ODOMETER NOWS READS  1 2 1 , 3 9 9  .XX (NO TENTHS) MILES,
DATE READ __8__ / __25__ / __2018__, AND WE HEREBY CERTIFY THAT TO THE BEST OF OUR KNOWLEDGE THE ODOMETER READING:

**CAUTION:** Read carefully before checking a box.

☒ 1. REFLECTS ACTUAL MILEAGE.
☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS. (EXCESS OF ITS MECHANICAL LIMITS APPLIES TO 5 DIGIT ODOMETERS)
☐ 3. IS NOT THE ACTUAL MILEAGE. WARNING ODOMETER DISCREPANCY

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

| Seller's Signature | | Seller's Printed Name |  |
| | | GIVE AWAY AUTO SALE, LLC | |

Seller's Street Address: 6400 34TH STREET NORTH

| City | State | Zip |
|---|---|---|
| PINELLAS PARK | FL | 33781 |

Buyer's Signature: [signature]   Buyer's Printed Name: JUSTIN LEE FOWLER

Buyer's Street Address: 10359 W HALLS RIVER RD

| City | State | Zip |
|---|---|---|
| HOMOSASSA | FL | 34448- |

In the reliance upon the Mileage Representation, Mr. Fowler agreed to purchase the Jeep for $11,000 ("Purchase Price"). (Complaint - ¶11; Fowler Declaration - ¶ 10).  After paying the entire Purchase Price for the Jeep, Mr. Fowler left the Dealership with the Jeep in the belief that he had acquired reliable transportation for his personal and household purposes. (Complaint - ¶12). Several weeks after purchasing the Jeep, Mr. Fowler contacted the Dealership to determine when he would receive the permanent registration to the Jeep. To the surprise of Mr. Fowler, the Dealership represented to Mr. Fowler that the Dealership "did not have title" to the Jeep and was working to obtain the title from some unspecified source. (Complaint - ¶13); Fowler Declaration- ¶¶12-13].  As a result of the failure of the Dealership to transfer title to the Jeep to Mr. Fowler, Mr. Fowler has been unable to drive the Jeep for transportation out of fear of being pulled over by law enforcement for driving with an expired temporary tag. Accordingly, Mr. Fowler has been unable to use the vehicle for personal purposes, including driving to and from work. (Complaint - ¶14).

In late February 2019, Defendant contacted Mr. Fowler to inform Mr. Fowler that Mr. Fowler needed to return to the Dealership to sign unspecified papers to transfer title to the Jeep to Mr. Fowler. (Complaint - ¶29). When Mr. Fowler returned to the Dealership, the Dealership presented Mr. Fowler with documents entitled "Separate Odometer Disclosure Statement and Acknowledgment" and "Application for Certificate of Title" ("Odometer Discrepancy Acknowledgments") which each stated that the mileage on odometer of the Jeep was "not the actual mileage." (Complaint -¶30; Exhibit "B"; Fowler Declaration- ¶¶29-33]).

As part of the Odometer Discrepancy Acknowledgments, the Dealership provided yet a second disclosure of the accuracy of the odometer of the Jeep. Unlike the Initial Odometer Statement, the Dealership now informed Mr. Fowler that the odometer of the Jeep was inaccurate.

3

(Complaint -¶¶ 29-31). The pertinent portion of the second disclosure is reproduced here:

**STATE OF FLORIDA**
**DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES**
**DIVISION OF MOTOR VEHICLES**
2900 Apalachee Parkway
NEIL KIRKMAN BUILDING, TALLAHASSEE, FLORIDA 32399-0610

**SEPARATE ODOMETER DISCLOSURE STATEMENT AND ACKNOWLEDGMENT**

**VEHICLE DESCRIPTION**

| Vehicle Identification Number | Year | Make | Color | Body | Title Number |
|---|---|---|---|---|---|
| 1J4RR4GG3BC585644 | 2011 | JEEP | ALUMINUM | 4D SUV 4WD | |

**ODOMETER DISCLOSURE STATEMENT**

WARNING: Federal and State law requires that you state the mileage in connection with an application for a Certificate of Title. Failure to complete or providing a false statement may result in fines and/or imprisonment.

WE STATE THAT THIS ☐ 5 or ☐ 6 DIGIT ODOMETER NOWS READS [1 2 2] , [3 9 6] .XX (NO TENTHS) MILES,
DATE READ __8__ / __25__ / __2018__ , AND WE HEREBY CERTIFY THAT TO THE BEST OF OUR KNOWLEDGE THE
ODOMETER READING:

**CAUTION:** Read carefully before checking a box.
☐ 1. REFLECTS ACTUAL MILEAGE.
☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS. (EXCESS OF ITS MECHANICAL LIMITS APPLIES TO 5 DIGIT ODOMETERS)
☒ 3. IS NOT THE ACTUAL MILEAGE. **WARNING   ODOMETER DISCREPANCY**

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

| Seller's Signature | Seller's Printed Name |
|---|---|
| | ELEGANT AUTO FINANCE, LLC |

| Seller's Street Address | | |
|---|---|---|
| 6400 34TH STREET NORTH | | |
| City | State | Zip |
| PINELLAS PARK | FL | 33781 |

| Buyer's Signature | Buyer's Printed Name |
|---|---|
| | JUSTIN LEE FOWLER |

| Buyer's Street Address | | |
|---|---|---|
| 10359 W HALLS RIVER RD, | | |
| City | State | Zip |
| HOMOSASSA | FL | 34448- |

**WHO IS AUTHORIZED TO COMPLETE THIS FORM?**
ANY PERSON WHO IS BUYING OR SELLING A MOTOR VEHICLE AND WHO MUST MAKE OR ACKNOWLEDGE AN ODOMETER DISCLOSURE, IN ORDER TO COMPLY WITH STATE OR FEDERAL ODOMETER DISCLOSURE LAW.

**WHEN SHOULD THIS FORM BE USED?**

Mr. Fowler refused to sign the Odometer Discrepancy Acknowledgments as it was apparent to Mr. Fowler that the Dealership had knowingly sold Mr. Fowler a vehicle with an inaccurate odometer. (Complaint - ¶32; Fowler Declaration- ¶33). The instant action ensued.

## II.  SYNOPSIS OF APPLICABLE FEDERAL CONSUMER LAW

### *1.  Overview of Odometer Act*

Congress passed the Odometer Act[1] to prevent fraud in the sale of motor vehicles. The Congressional intent in passing the Act was to prevent odometer tampering and to provide other general safeguards for the protection of consumers. 49 U.S.C. §32701(b).

The Act has four major substantive provisions relating to odometers:

- the Act prohibits odometer tampering, advertising or selling odometer fraud devices, and operating a vehicle knowing the odometer is not functioning, 49 U.S.C. §32703;

- the Act establishes procedures to follow when a motor vehicle repair results in the change of an odometer reading, 49 U.S.C. §32704;

- the Act requires that each time a vehicle is transferred, that the transfer disclose the odometer reading and whether the odometer reading is accurate, 49 U.S.C. §32705; and

- the Act prohibits parties from conspiring to violate any of the Act's provisions, 49 U.S.C. §32703(4).

**The federal claims in this lawsuit are based on the Dealership violating the Act's disclosure requirements of 49 U.S.C. §32705, not on a claim of tampering under 49 U.S.C. §32703.**

In its Summary Judgment Motion, the Dealership suggests that a Jeep with an *inaccurate* odometer is somehow worth the same as a similar Jeep with an *accurate* odometer (Summary Judgment Motion - ¶4).  Thus, according to the convoluted reasoning of the Dealership, the harm to Mr. Fowler is immaterial. As discussed below, the position of the Dealership is contrary to both common sense and the overwhelming authority of law.

---

[1] Previously known as the "Motor Vehicle and Information Cost Savings Act."

5

### *2. The Courts Broadly Construe and Vigorously Enforce the Odometer Act*

The Odometer Act is to be broadly and vigorously applied to accomplish the Act's purposes. "The statute is obviously remedial in nature and should be broadly construed to effectuate its purpose." *Ryan v. Edwards*, 592 F.2d 756, 759-60 (4th Cir. 1979); *Hughes v. Fox*, 814 F.2d 498, 501 (8th Cir. 1987); *Sarratore v. Longview Van Corp.*, 666 F. Supp 1257 (N.D.In. 1987); *Stien v. Park Pontiac*, 391 F. Supp 397 (S.D. W.Va. 1975)  A broad construction of the federal Act serves an important public policy. Congress sought to require accurate odometer statements and other pertinent information concerning motor vehicles to penalize those that engage in odometer tampering and related wrongdoing. The provision of specific statutory obligations, a private right of action, minimum statutory damages, treble damages and attorney's fees to the prevailing plaintiffs all evince a policy of encouraging private litigation to foster a specific public policy. *Compare*, *Ives v. City of Riviera Beach*, 166 F.3d 1332 (11th Cir.1999)[liberal construction of term employer in Title VII action]; *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir.1998) ["in this case, we examine TILA [Truth in Lending Act], a consumer protection statute which … is remedial in nature and therefore must be construed liberally in order to best serve Congress' intent]; *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir.1985) [in the context of a Fair Debt Collection Practices Act claim, 11th Circuit adopted more liberal "least sophisticated consumer" standard as opposed to "reasonable consumer" standard in evaluating collector conduct]; *Jordan v. Transnational Motors*, 537 NW 2d 471 (1995) [Magnuson-Moss Act to be liberally construed as remedial statute].

As a salient example of the broad scope of the Act, the Act provides for a civil enforcement action without a restriction on the class of persons entitled to sue. 49 U.S.C. §32710.  A person suing need not have been damaged; there is a minimum statutory award of $10,000.00 to encourage

persons who discover and act on violations. *Evans v. Paradise Motors, Inc.*, 1121 F. Supp. 250 (N.D. Ca.1989).

As discussed below, Dealership violated the disclosure requirements of the Act in two ways. First, the Dealership made false statements as to the mileage of the Jeep. Second, the Dealership concealed the fact that it did not have title to transfer the Jeep by providing those false mileage disclosure statements on something other than the title. *See, Owens v. Samkle Automotive Incorporated*, 425 F. 3rd 1318 (11th Cr. 2005).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Sgt. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.' " *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015)).

## III.  LEGAL ARGUMENT

A. **A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER THE DEALERSHIP HAD THE REQUISITE INTENT WHEN IT MADE THE FALSE STATEMENTS AS TO MILEAGE ACCURACY.**

1. **The Odometer Act does not require the plaintiff show the defendant had actual knowledge of the odometer inaccuracy to establish intent to defraud.**

The Act's disclosure requirements are central to the Act's effectiveness. Even if a transferor has not tampered with an odometer (in fact, even if an odometer was never rolled back), a transferor may violate the Act by violating the disclosure requirements. *See*, *Ryan v. Edwards,* 592 F.2d 756, 760 n.4 (4th Cir. 1979) (tampering and disclosure violations are alternative claims under the Act); *Resendiz v. Eatinger*, 1990 WL 84527 (N.D. Ill. June 8, 1990).  Disclosures are important because they create a paper trail of the odometer reading at each transfer, facilitating investigation of odometer fraud. Disclosures also provide the transferee with important information, such as that the odometer reading is not accurate.

The Act requires that a person transferring a motor vehicle's title to give the transferee a written disclosure of the mileage registered by the odometer or a disclosure that the mileage is unknown if the transferor knows the mileage registered by the odometer is incorrect. 49 U.S.C. §32705(a). The Act also indicates that the disclosure must be in compliance with National Highway Traffic Safety Administration ("NHTSA") regulations, which specify the disclosure requirements in more detail. 49 C.F.R. pt. 580.

2. **Reckless disregard or gross negligence with respect to an odometer disclosure satisfies the Act.**

The Eleventh Circuit has analyzed very few cases involving claims under the Odometer Act. However, other circuits have delved into the criterion and standards under the statute. The

8

Fifth Circuit Case of *Nieto v. Pence*, 578 F.2d 640 (5th Cir. 1978) is illustrative of the majority view. In *Nieto,* the court held that:

> a transferor who lacked actual knowledge may still be found to have intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown. A transferor may not close his eyes to the truth. If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence.

*Id*. at 642.  Numerous other circuits have held that absent actual knowledge, a transferor can still be found to have the requisite intent to defraud if they exhibited gross negligence or a reckless disregard for the truth. *See, Rogers Motors of Hermiston, LLC v. Bartlett, LLC,* 2018 WL 616138 (E.D. WA Jan. 29, 2018*); Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d. 1275, 1282 (10th Cir. 1998); *see also Tusa v. Omaha Auto. Auction, Inc.*, 712 F.2d 1248, 1253-1254 (8th Cir. 1983); *see also Ryan v. Edwards,* 592 F.2d 756, 762 (4th Cir. 1979) (holding that constructive knowledge, recklessness, or even gross negligence in determining and disclosing the actual mileage traveled by a vehicle have been held sufficient to support a finding of intent to defraud); *see also Aldridge v. Billips*, 656 F. Supp. 975, 978-979 (W.D. Va. 1987) (concluding that mere reliance on the odometer reading, in the face of other readily ascertainable information from the condition of the vehicle constitutes a reckless disregard that rises to the level of intent to defraud, as a matter of law).

### *3. The Initial Odometer Statement Falsely Stated that Mileage was Accurate*

The content of the required mileage disclosures is essentially the same, whether made on the title, on a power of attorney, on a reassignment document, on a separate disclosure statement, or electronically. See, 49 C.F.R. § 580.5(a), (b), (g); 49 C.F.R. §§ 580.13(a), 580.14(b). The

transferor discloses the odometer reading at the time of the transfer and whether the reading is accurate. 49 C.F.R. § 580.5(c)(1) and (e).

At the time the Jeep was sold to Mr. Fowler, the Dealership provided Mr. Fowler with the Initial Odometer Statement that falsely averred under penalty of perjury that the mileage was accurate. The subsequent attempt by the Dealership to secure Mr. Fowler's signature on the Odometer Discrepancy Acknowledgments -nearly seven months after the purchase - is objective, incontrovertible proof that the disclosures at the time of purchase were false.[2]

### 3. The Purchase and Finance Documents Provided Additional False Disclosures of the Mileage Reading for the Jeep

A false statement on the disclosure form violates the Act's disclosure requirements. In addition, the Act states that a person who transfers ownership of a vehicle may not "give a false statement to the transferee in making the disclosure required by [NHTSA's odometer disclosure] regulation." This language covers not just false statements made on the disclosure form, but false statements made in connection with making the disclosure. Thus, oral statements, advertising, and written claims found in documents other than the disclosure form are covered, as long as these statements are related to the making of the disclosures. *See, Hughes v. Box,* 814 F.2d 498 (8th Cir. 1987); *Ryan v. Edwards*, 592 F.2d 756 (4th Cir. 1979). Because the disclosures must be made as part of the process of transferring title, representations related to a sale are related to the process of making the disclosures.

In *Ryan*, the Fourth Circuit has found the Act applied to a car dealer's false newspaper advertising that described a car as "low mileage" and to false oral statements concerning mileage.

---

[2] Mr. Fowler contends that evidence will demonstrate that the attempt by the Dealership to disclose the odometer inaccuracy was actually predicated on the efforts of Mr. Fowler to secure title to the Jeep by communicating with the Department of Motor Vehicles.

10

*Id.* at 759. The Court stated: "[a] transferor cannot insulate himself from liability under the statute by completing the odometer disclosure statement correctly, and then contradicting that statement with false oral claims." *Id.*

In addition to the Initial Odometer Statement, the Dealership allegedly provided the odometer disclosures in both the Bill of Sale and Retail Installment Contract and Security Agreement (Complaint - ¶¶ 18-19; Exhibits "A" and "B" respectively). Under both, the Dealership represented to Mr. Fowler that the odometer reading for the Jeep was 121,399 miles and that by implication that the odometer was accurate. As the undisputed facts show, neither was true.

In its Summary Judgment Motion, the Dealership attempts to wave-off its violation of the Act by arguing that the difference in mileage readings was "*only 997 miles or less than 1% of the mileage.*" (Summary Judgment Motion – p.3). As such, the Dealership utterly obscures the fact that the Odometer Discrepancy Acknowledgments did not just say that the mileage was different from what was told to Mr. Fowler, but that the odometer did not show "***actual mileage***." For all Mr. Fowler and the world know, the mileage of the Jeep could be anything from 997 miles to a million miles more than what is shown. The odometer could have been tampered with, replaced, reset, broken or altered. In short, the how and why the mileage is wrong is uncertain to everyone.

The effect of the "not actual mileage" disclosure is also clear: the State of Florida Department of Highway Safety and Motor Vehicles ("DMV") will issue a title that contains a "***not actual mileage***" brand. According to DMV, if the status is "not actual," it indicates that the odometer may have been repaired or replaced. *See*, https://www.flhsmv.gov/pdf/mv/mv_fraud. The difference in value of a car with such a branded title is significant.

With respect to Mr. Fowler, he bargained for (and paid for) a Jeep with an unbranded title and an accurate odometer. He got neither. In fact, as stated in the Complaint, to this day, Mr.

11

Fowler has yet to even receive his car title.

In his Declaration, Mr. Al Shboul excuses the multiple false mileage disclosures by stating that the mileage discrepancy was a result of a third-party error at the auction [DE 30]. Contrary to the Dealership's argument, an intent to defraud can be inferred even when the odometer disclosure provided to the dealer indicates that the mileage is accurate. Dealers have a duty to inspect and make an independent determination. Congress explicitly rejected including language in the Act which would have permitted reliance on the disclosure of the previous owner. *See,* Amendment No. 63 to S. 976, 117 Cong. Rec. S12,659 (daily ed. Apr. 29, 1971). A visual inspection of the odometer would have readily informed the Dealership to the discrepancy.

As further explained below, the selling auction had placed the Jeep under a "blue light" warning- meaning that the title was not available. A jury could certainly infer an intent to defraud when the Dealership provided an "accurate mileage" disclosure when there was no assignment on a physical title from which the Dealership can base its disclosure in the first place.

## II. UNDER THE BINDING 11th CIRCUIT PRECEDENT OF *OWENS v. SAMKLE AUTOMOTIVE INCORPORATED*, 425 F. 3rd 1318 (11th Cir. 2005), THE DEALERSHIP COULD ONLY SATISFY THE DISCLOSURE REQUIREMENT BY PRODUCING THE JEEP TITLE FOR INSPECTION.

The Dealership was on notice the Jeep did not have a title when it was bought at the auction. It is undisputed the title has not been that transferred to Mr. Fowler even today, despite his payment of more than the agreed purchase prices. According to Mr. Al Shboul's deposition, the auction alerted the Dealership that the Jeep lacked a title:

```
1    Q    Okay.  When the vehicle was purchased from
2         Manheim Auto Auction it was -- first of all, Manheim
3         Auto Auction is an auction where dealers go buy cars,
```

12

```
4      right?

5      A     And sell.

6      Q     And sell cars.  And you're familiar with how

7      the cars are presented, correct, under lights?

8      A     Green.

9      Q     Green?

10     A     Uh-huh.

11     Q     What's green mean?

12     A     Just mean in good condition.

13     Q     And no title problems, right?
```

(Al Shboul Deposition- page 107)

```
2      Q     And red means that the vehicle is sold as-is

3      mechanically, correct?

4      A     Uh-huh.
                    *              *              *
23     Q     Right.  But there's another light too, it's

24     blue.

25     A     Blue.
```
(Al Shboul Deposition- page 109)
```
1      Q     Blue means what?

2      A     That's no title.

3      Q     No title.

4      A     That's the square here.

5      Q     Right, you bought the vehicle under a blue
```

13

| | | |
|---|---|---|
| 6 | | light, correct? |
| 7 | A | That's fine, yeah. That's not the only |
| 8 | | vehicle that we bought with no title because they have |
| 9 | | 30 days to provide it. |
| 10 | Q | And that was not done, right? |
| 11 | A | What does that mean? |
| 12 | Q | Well -- |
| 13 | A | We did receive the title, yeah. |
| 14 | Q | When did you get the title? |
| 15 | A | It's still at the Manheim auction. |
| 16 | Q | So you have not gotten the title yet, right? |
| 17 | A | No. |

(Al Shboul Deposition- page 109)

In 1986 Congress amended the Federal Odometer Act to require that the odometer disclosure be made on the title certificate. S.Rep. No. 99-47, at 1-2 (1986), reprinted in 1986 U.S.C.C.A.N., 5620, 5621. "The central purpose of [the statute] is to make the title document the sole vehicle for odometer disclosures, thereby completing a years-long movement among the States toward the use of the title for disclosure." See, Supplementary Information to 1991 Final Rule, 56 Fed. Reg. 47,681, 47,684 (1991). Disclosure on the title was required because "using a separate document for odometer disclosure, which had been common in the early days of the Federal odometer law, had been shown to be too vulnerable to abuse." *Id*. Thus, with the 1986 amendment, Congress gave the Federal Odometer Act an additional "central purpose" by requiring the title document to be the *only* place for the disclosure under the Act. *See, Owens v. Samkle Automotive, Inc.*, 425 F.3d 1318 (11th Cir. 2005).

In *Owens*, the aggrieved car buyer purchased a used car which had been previously owned by a car rental company. In reversing the district court, the Eleventh Circuit held that the car dealer, in violation of the regulations promulgated under the Odometer Act, had not disclosed the automobile's mileage in writing "on the title," but rather on a separate odometer disclosure statement, in an attempt to conceal from the buyer that her car had been previously owned by a car rental company. *Id.* at 1325.

In the same fashion as the Defendant here, the dealership in *Owens* argued that the Odometer Act required fraudulent intent with respect to the disclosure of mileage. The Eleventh Circuit, however, disregarded the argument, reasoning:

> Therefore, to limit private civil suits under Section 32710(a) only to instances where the defendant intended to defraud the victim with respect to the vehicle's mileage runs counter to the purposes of the private civil remedy — to compensate victims for harm suffered *and* to ensure strict compliance with the Odometer Act's provisions. Both purposes are also reflected in the text of Section 32710(a). The violator must make the victim whole, but also must pay an additional price — either double the actual damages or up to $1,500 — as a penalty for violating the Act. 49 U.S.C.§32710(a)(2000). It would therefore be inimical to a private civil remedies function as the Act's primary enforcement mechanism to limit its reach to instances where the defendant intended to defraud its victim "with respect to a vehicle's mileage." Such a reading neither comports with the statute's plain language, nor accords with its remedial purpose.
>
> *Id*.

The Eleventh Circuit has adopted a more expansive view of the role of the Odometer Act to prevent fraud in motor vehicle sales than other Circuits. As seen above, the 11th Circuit recognized that a claim exists where the fraud relates to matters other than the vehicle's mileage. *Contrast, Bodine v. Graco, Inc*. 533 F. 3rd 1145 (7th Cir. 2008); *Iofee v. Skoie Motor Sales, Inc*., 414 F. 3rd 708 (7th Cir. 2005).

In the instant case, Dealership violated the disclosure requirements of the Act in two ways. First, as discussed above, the Dealership made false statements as to the mileage of the Jeep.

Second, the Dealership concealed the fact that it did not have title to transfer the Jeep by providing those false mileage disclosure statements on something other than the title. [Complaint - ¶42].  **In its Summary Judgment Motion, the Dealership offers no argument addressing the second aspect of the Act's violation.**

Despite the directive by the 11th Circuit that the odometer disclosure must be made on the title, the Dealership never provided the Jeep title to Mr. Fowler for his inspection before his purchase (because it never had the title) [Fowler Declaration - ¶34].  Had the Dealership been honest with Mr. Fowler and told Mr. Fowler that it did not have an assignable title to the Jeep, Mr. Fowler would not have agreed to the purchase. [Fowler Declaration- ¶38].  Instead aided by the artifice of Initial Odometer Statement and other sale documents, the Dealership violated the Act.

### III. THE ACTIONS OF THE DEALERSHIP AFTER THE SALE OF THE JEEP- INCLUDING THE REPOSSESSION- DEMONSTRATES THE CONTINUED FRAUDULENT INTENT OF THE DEALERSHIP AND CREATES AN FURTHER ISSUE OF FACT.

As detailed in the Complaint, the Dealership repossessed the Jeep in October 24, 2018 based on a fabricated claim that Mr. Fowler owed $901.84 of the vehicle purchase price. Before returning the Jeep, the Dealership nonetheless demanded the sum of $2,800.00 ("Redemption Amount").  In the Motion for Summary Judgment, the Dealership states that Mr. Fowler "was notified of the mistake in October 2018, and he accepted the mistake; as a result, he paid the $2800 to redeem the vehicle." [Summary Judgment Motion- p. 2].

The facts are not as the Dealership proffers. In his Declaration, Mr. Fowler provides a clear description of the following facts:

- that Mr. Fowler paid the entire purchase price for the Jeep in August 2018 [Fowler Declaration- ¶¶11-14];

- that Mr. Fowler had been contacting the Dealership repeatedly about the failure to

deliver the Jeep title [Fowler Declaration - ¶¶12-13];

- that after the repossession, the Dealership provided Mr. Fowler with photocopies of a documents entitled "Bill of Sale" and "Retail Installment Contract and Security Agreement" (collectively "Disputed Purchase and Finance Documents") [Fowler Declaration- ¶¶17-24];

- that although the Disputed Purchase and Finance Documents appear to have the signature of Mr. Fowler, Mr. Fowler believes that Dealership fabricated the document through "cut and pasting" the signature of Mr. Fowler from another document [3] [Fowler Declaration - ¶24];

- that after the taking of the Jeep, Mr. Fowler paid the Redemption Amount to safeguard his substantial investment in the Jeep [Fowler Declaration - ¶27]; and

- that in late January 2019, Mr. Fowler thru counsel communicated with the Virginia Department of Motor Vehicles ("Va. DMV")[4] that Mr. Fowler had purchased the Jeep and had not received title [Fowler Declaration - ¶29].

Contrary to the Dealership's version of the facts, Mr. Fowler was not told about the mileage discrepancy until late February 2019. [Fowler Declaration - ¶¶36-37]. Rather, Mr. Fowler through counsel communicated with the Va. DMV to determine the current title owner of the Jeep. Within days, the Dealership contacted Mr. Fowler to inform Mr. Fowler that Mr. Fowler needed to return to the Dealership to sign unspecified papers to transfer title to the Jeep to Mr. Fowler. When Mr. Fowler returned to the Dealership, the Dealership presented Mr. Fowler with the Odometer Discrepancy Acknowledgments which each stated that the mileage on odometer of the Jeep was "not the actual mileage." Mr. Fowler refused to sign the Odometer Discrepancy Acknowledgments

---

[3] The process in which text or other data is moved from one part of a document and inserted elsewhere.

[4] Virginia was the last state in which the Jeep had a record title.

as it was apparent to Mr. Fowler that the Dealership had knowingly sold Mr. Fowler a vehicle with an inaccurate odometer [Fowler Declaration- ¶33].

Mr. Fowler believes that a jury will view the post-sale actions of the Dealership as further evidence of the fraudulent intent to evade the requirements of the Act. First, when confronted with an angry Mr. Fowler demanding title that it did not have (and still does not), the Dealership concocted the ruse of an unpaid debt to take the Jeep. Then when Mr. Fowler appeared at the Dealership to reclaim his car, the Dealership ginned up a claim that it was owed the Redemption Amount in the belief that Mr. Fowler - a young laborer - would not have the money be able to pay. After Mr. Fowler retrieved his Jeep and began to communicate with the Va. DMV, the Dealership - under pressure to ameliorate its wrongdoing- finally disclosed that the odometer was inaccurate. All these facts support the Odometer Act claim of Mr. Fowler and rebut the self-serving statement by Mr. Al Shboul of dealership innocence.

## IV.  CONCLUSION

As argued above, the Motion for Summary Judgment was filed despite issues of material fact. The determination of this cause must be submitted to a jury. Only upon consideration of testimony and the evaluation of competent, admissible evidence can a factfinder reach a conclusion as to whether Mr. Fowler was cheated when he bought and paid for his Jeep.

*/s/ Robert W. Murphy*_____
ROBERT W. MURPHY, ESQ.
Florida Bar No.: 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 763-8660
Facsimile:  (954) 763-8607
rwmurphy@lawfirmmurphy.com
**Counsel for Plaintiff**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the United States District Court, Middle District of Florida, CM/ECF system, on January 16, 2020, to counsel of record:

Joel M. Aresty, Esq.
JOEL M. ARESTY, P.A.
309 1st Ave S
Tierra Verde, FL 33715
E-Mail: Aresty@Mac.com

*Counsel for Defendant*

                                               /s/ *Robert W. Murphy*
                                               Attorney for Plaintiff